**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MELISSA THORNLEY, DEBORAH BENJAMIN-KOLLER, and JOSUE HERRERA, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>CLEARVIEW AI, INC.,<br><br>  Defendant | Case No. 20-cv-3843<br><br>Hon. Sharon Johnson Coleman |

**MEMORANDUM IN SUPPORT OF MOTION TO REMAND**

Plaintiffs Melissa Thornley, Deborah Benjamin-Koller, and Josue Herrera ("Plaintiffs") submit this memorandum in support of their Motion, pursuant to 28 U.S.C. §1447(c), to remand this case to the Circuit Court of Cook County, Illinois, where it was originally filed. Section 1447(c) provides, in relevant part, that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

Plaintiffs' Class Action Complaint ("Complaint") against defendant Clearview AI, Inc. ("Clearview") alleges a narrow claim of statutory aggrievement under §15(c) of Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS §14/1 (2008), unaccompanied by any claim of actual injury. The sole relief sought in Plaintiffs' Complaint is statutory damages (and attorneys' fees) based on defendant's procedural violation of §15(c) of BIPA.

Under the standards recently addressed by the Seventh Circuit in *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020), *as amended* (June 30, 2020), Plaintiffs' claim of "'a bare procedural violation, divorced from any concrete harm,' does not 'satisfy the injury-in-fact requirement of Article III.'" *Id*. at 621, quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49

(2016), *as revised* (May 24, 2016). Absent "a concrete and particularized injury" resulting from Clearview's alleged violation of §15(c), Article III standing necessary to establish federal jurisdiction does not exist. *Id*. at 626. Accordingly, Section 1447(c) requires the Court to remand this case back to the Circuit Court of Cook County.

## Statement of the Case

### I.     Plaintiffs' Complaint

Section 15(c) of BIPA contains the Illinois General Assembly's general prohibition on the sale or other commercial exploitation of biometric data in Illinois. Section 15(c) provides that:

> No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information. (740 ILCS §14/15(c).)

It contains no exemptions, nor any exceptions based on an individual's consent, and consistent with the absence of a consent provision, it contains no notice or other disclosure requirements.

Plaintiffs, citizens of Illinois, contend that Clearview violated §15(c) of BIPA by selling access to a database of biometric facial scans in its possession containing their (and the Class of other Illinois citizens') biometric identifiers and information to businesses in Illinois. (Complaint, ¶34.)

Unlike all the other Clearview cases pending before the Court, Plaintiffs here make no claim of any other violation of BIPA, nor any claim based on any constitutional, common law, or statutory cause of action.[1]  Plaintiffs do not assert that Clearview violated §15(b) of BIPA by

---

[1]     *See Mutnick v. Clearview AI, Inc., et al.*, Case No. 20-cv-512, Complaint (ECF 1), asserting claims under BIPA §§15(a), (b), (c), and (d) and claims for unjust enrichment and constitutional violations; *Hall v. CDW Government LLC, et al*, 20-cv-846, Complaint (ECF 1), asserting claims under BIPA §§15(a), (b), (c), and (d) and claims pursuant to the Illinois Consumer Fraud and Unfair Business Practices Act and for conversion; *Marron v. Clearview AI, Inc., et al*, 20-cv-2989, Complaint (ECF 1), asserting claims under BIPA §§15(a), (b), (c), and (d).

collecting their photographs (from public sources), converting their photographs into biometric facial scans, and creating and possessing a database of those scans.[2] Plaintiffs, thus, make no claim that Clearview deprived them of their statutory rights under §§15(b)(1), (b)(2) or (b)(3) of BIPA, which requires prior statutory disclosures to, and written consent from, individuals whose biometric data is collected or possessed in Illinois.[3] Plaintiffs have also not alleged that Clearview violated Section 15(a) of BIPA, which requires a private entity to develop and comply with a publicly-available, written policy regarding retention and destruction of the biometric information in its possession.[4]

---

[2] Section 15(b) of BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. (740 ILCS §14/15(b).)

[3] While Plaintiffs believe that Clearview's conduct in secretly amassing a nationwide database of over 3 billion photographs and facial scans is repugnant, Clearview has submitted Declarations in *Mutnick* and *Hall* asserting that it engaged in such conduct on servers located outside the State of Illinois (in New York and New Jersey), *see e.g.*, *Mutnick,* Declaration of Richard Schwartz ("Schwartz Dec.") (ECF 46-2) at ¶¶7, 9; Declaration of Thomas Mulcaire ("Mulcaire Dec.") (ECF 56-2) at ¶4, raising issues as to BIPA's application. *See Patel v. Facebook, Inc.,* 933 F.3d 1264, 1275-76 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 937 (2020) (discussing limits under Illinois law of extraterritorial application of BIPA). Plaintiffs have framed their Complaint to avoid this issue by limiting their claim to Clearview's conduct in selling access to the biometric data in its database to customers in Illinois in violation of §15(c) of BIPA. Complaint, ¶34.

[4] Section §15(a) of BIPA provides:

…continued on next page

Plaintiffs do not assert that Clearview ever actually disclosed or otherwise disseminated their biometric data in the State of Illinois – conduct that, pursuant to §15(d) of BIPA, would have required Clearview to have obtained Plaintiffs' consent.[5] To the contrary, Plaintiffs affirmatively allege their belief that no disclosure of their biometric data has occurred. (Complaint, ¶20.)

Likewise, Plaintiffs have expressly limited the putative class they seek to represent in this action to individuals whose photographs and scans, although included in Clearview's database, have never been disseminated, defining the proposed Class as follows:

> All current Illinois citizens whose biometric identifiers or biometric information were, without their knowledge, included in the Clearview AI Database at any time from January 1, 2016 to January 17, 2020 (the "Class Period") and who suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement in that there is no evidence that during the Class Period: (i) a

---

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines. (740 ILCS §14/15(a).)

[5] Section §15(d) of BIPA provides:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

    (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

    (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

    (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

    (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. (740 ILCS §14/15(d).)

4

photograph of the Class member was ever uploaded to the Clearview AI App by any user of the Clearview AI App; (ii) any user of the Clearview AI App sought to use the Clearview AI App and Database to identify them; and (iii) their biometric identifiers or biometric information in the Clearview AI Database were never disclosed to any users of the Clearview AI App or any third-parties. (*Id., ¶*25.)

Plaintiffs' Complaint expressly states that neither the named Plaintiffs, nor any Class member suffered any injury (other than statutory aggrievement) as a result of Clearview's violation of §15(c) of BIPA:

> During the Class Period, none of the Plaintiffs nor any Class Members suffered any injury as a result of the violations of Section 15(c) of BIPA other than the statutory aggrievement alleged in Paragraph 38. (*Id.*, ¶39.)

And Plaintiffs further have defined their cause of action to preclude the possibility of any future injury to them or the Class members. Plaintiffs' individual claims and the Class Period are limited in time to Clearview's past conduct between January 1, 2016 and January 17, 2020. (*Id., ¶¶*25, 34.)

Plaintiffs' Complaint, thus, alleges only a procedural violation of §15(c)'s unqualified prohibition against profiting from a person's or a customer's biometric identifier or biometric information, unaccompanied by any particularized harm resulting from the violation and with no risk of future harm.[6]

---

[6] It is Plaintiffs' understanding, from Clearview's description of its software in its Declarations, that Clearview's software application searches Clearview's servers (located outside of Illinois) for matches between a facial scan created from a photograph uploaded by a licensed user and the facial scans created from all the photographs in Clearview's database and displays any matched photographs to the user of Clearview's application. According to Clearview, only photographs in the database (and information relating to how the photograph was obtained, such as the website it was located on) matching an uploaded photograph is displayed to the user. *See Mutnick*, Mulcaire Dec., ¶9. (*See also* Complaint, ¶¶8, 18.) Plaintiffs believe that their photographs have not been matched and displayed as a result of any search conducted by a Clearview user. (*Id*., ¶20.).

5

## II. Procedural History

Plaintiffs filed this action in the Circuit Court for Cook County, Illinois on May 27, 2020 and served Clearview on June 1, 2020.[7] Clearview removed the action to this Court on June 30, 2020. (ECF 1.) Clearview's Notice of Removal asserts a basis for federal jurisdiction pursuant to the diversity provisions of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C., §1332(d). (ECF 1 at ¶7.) In its Notice of Removal, Clearview does not address or set forth any basis for a finding of Article III standing.

The action was transferred to this Court's docket by the Executive Committee on July 14, 2020. (ECF 14.) Plaintiffs now move for remand of this action to state court, pursuant to 28 U.S.C. §1447(c), based on lack of Article III standing over Plaintiffs' BIPA §15(c) claim.

Plaintiffs note that the plaintiff in *Mutnick* has moved (in *Mutnick*) to consolidate the Clearview-related cases pending before this Court. *Mutnick,*, ECF 82. As indicated in his motion to consolidate, should the Court deny Plaintiffs' Motion to Remand, Plaintiffs consent to such consolidation. *Id*. at 2 n. 1. In his Motion, Mutnick suggests that the consolidation he proposes would moot what he calls Plaintiffs' "procedural motion" and urges the Court to grant his motion even before Plaintiffs' Motion to Remand is decided. *Id.* at 6-7. But, as discussed below, the issue raised by Plaintiffs' Motion is a challenge to this Court's exercise of subject matter jurisdiction

---

[7] Plaintiffs filed a prior action against Clearview in Cook County Circuit Court on March 19, 2020. That action, filed before Clearview had submitted declarations describing where its conduct occurred, *see* n. 3, and how its software worked, *see* n. 6, alleged violations of BIPA §§15(a), (b), and (c). Clearview removed the action to this Court on May 15. 2020. *See* Case No. 20-cv-2916, ECF 1. In light of Clearview's assertions as to how and where it conducts its business, Plaintiffs believed it was appropriate to reformulate their claims, limiting them to claims under §15(c). Plaintiffs, thus, voluntarily dismissed the prior action on May 21, 2020, and brought the current action asserting (only) Clearview's violation of §15(c) of BIPA. It should be noted that the factual predicate and foundation for Plaintiffs' claims differ from the claims asserted in the other Clearview cases before the Court, all of which allege conduct based on Clearview's capture, possession, and dissemination of biometric data.

over Plaintiffs' claims, which is to be determined based on the allegations of Plaintiffs' Complaint at the time of remand. Mutnick is wrong when he contends that a consolidated complaint that includes Plaintiffs' claim would moot Plaintiffs' Motion to Remand. *See In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir.2010) ("The well established general rule is that jurisdiction is determined at the time of removal and nothing filed after removal affects jurisdiction."). Plaintiffs' Motion to Remand raises a question regarding subject matter jurisdiction, so the Motion must be decided before Mutnick's consolidation motion.

## Argument

**I.    The Seventh Circuit's Recent Decision in *Bryant* Is Controlling and Dispositive.**

The Seventh Circuit's decision in *Bryant* is controlling and dispositive of the issues presented by Plaintiffs' Motion and requires remand of this action to the Circuit Court of Cook County. In *Bryant*, the Seventh Circuit considered whether individuals aggrieved by violations of §§15(a) and 15(b) of BIPA have suffered an "injury-in-fact" needed to support Article III standing. 958 F.3d 617. The Seventh Circuit reached different conclusions with respect to the two sections, and the reasoning and analysis employed by the court directly informs whether Article III standing exists for the violation of BIPA §15(c) alleged by Plaintiffs. *Id.*

In *Bryant*, the Court of Appeals affirmed the established law that "'a bare procedural violation [of a statute], divorced from any concrete harm,' does not 'satisfy the injury-in-fact requirement of Article III.'" *Id*. at 621, quoting *Spokeo,* 136 S. Ct. at 1548-49. Rather, "'the plaintiff must show that the statutory violation presented an "appreciable risk of harm" to the underlying concrete interest that [the legislature] sought to protect by enacting the statute.'" *Id.,* quoting *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017).

Section 15(b) of BIPA provides that before a private entity may collect and possess an individual's biometric data,[8] it must provide the individual with an informed choice about whether to relinquish control of his or her data. In *Bryant*, the Court of Appeals found that "the informed consent regime laid out in section 15(b) is the heart of BIPA" and that a violation of §15(b)'s required statutory disclosures or failure to obtain §15(b)'s required statutory consent to collection of the biometric data "deprived [Bryant] of the ability to give the *informed* consent section 15(b) mandates" and, thus, "inflicted the concrete injury BIPA intended to protect against, *i.e.,* a consumer's loss of the power and ability to make informed decisions about the collection, storage and use of her biometric information." *Id*. at 626-27. This concrete injury satisfied the requirements for Article III standing, allowing Bryant's §15(b) claim to proceed in federal court. *Id.*; *accord Cothron v. White Castle Sys., Inc.*, No. 19 cv 382, 2020 WL 3250706, at *2-4 (N.D. Ill. June 16, 2020) (violation of §15(b) gives rise to "concrete informational injuries – where the alleged violation deprives a person of substantive information that could plausibly alter future decision-making").

The Court of Appeals reached a different conclusion with respect to Bryant's claim based on §15(a) of BIPA. Bryant's §15(a) claim was based on a provision of that section that requires a private entity in possession of biometric data to develop a written policy, made available to the public, establishing a retention schedule and guidelines for destruction of the biometric data. 740 ILCS §14/15(a). A separate provision of §15(a) further obligates private entities to comply with their retention schedules and destruction guidelines, *id.*, but Bryant made no claim under that portion of §15(a).

---

[8] A facial scan is specifically included in BIPA's definition of biometric identifiers protected by the statute. *See* 740 ILCS §14/10 ("'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.").

The Seventh Circuit held that the provision of §15(a) on which Bryant's claim of a statutory violation was based was "not part of [BIPA's] informed-consent regime, and [that] Bryant alleges no particularized harm that resulted from [the defendant's] violation of section 15(a)." 958 F.3d at 626. Bryant "therefore lack[ed] standing under Article III to pursue that claim in federal court." *Id*.

The holding in *Bryant* is dispositive here. As with the provision of §15(a) at issue in *Bryant*, the provisions of §15(c) do not involve, in any way, BIPA's informed consent regime. Unlike BIPA §§15(b) and 15(d), the Illinois General Assembly's prohibition in §15(c) of profiting from biometric data is not subject to a notice provision, nor excused by individualized consent. Thus, unlike the plaintiffs in *Bryant* and *Cothron*, Plaintiffs here suffered no "informational" injury and were never deprived of their right to choose whether to allow their biometric data to be collected (§15(b)) or disseminated (§15(d)). *See, e.g., Cothron,* 2020 WL 3250707 at *4 (finding standing under BIPA's §15(d) because §15(d), like §15(b), "requires entities to obtain a person's consent when disclosing or disseminating an individual's biometric data" and thus "forms a piece of the 'informed consent regime' at the heart of BIPA".[9]

In *Bryant*, the Seventh Circuit also looked to whether the statutory injury at issue involved a violation of the private plaintiff's own right, as opposed to the vindication of a public right. 958 F.3d at 624. In contrast to §§15(b) and (d) of BIPA, which clearly establish the individual's private right to control his or her biometric data by requiring the possessor of such data to give notice and obtain the individual's consent to its collection or dissemination, §15(c) sets forth a general

---

[9] Section 15(d) of BIPA prohibits a private entity in possession of biometric data from disclosing a person's data unless "the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure" or in three other limited circumstances. 740 ILCS §14/15(d). Section 15(c), which prohibits private entities, such as Clearview, from profiting from biometric data, contains no exceptions. 740 ILCS §14/15(c).

prohibition on any private entity's profiting from biometric data. Section 15(c) contains no exceptions to this prohibition, nor does it allow individuals to "consent" to a private entity profiting from their biometric data. Like any regulation or civil or criminal statute of general application, the prohibition imposed by §15(c) runs for the benefit of the public and vindicates public rights.

## II. Plaintiffs Have Not Alleged Any Particularized Harm Resulting from Clearview's Violation of Section 15(c) of BIPA.

Even if Plaintiffs' §15(c) claim might be deemed to assert a violation of their own private rights, there would still be no Article III injury in this case. It is well-established that to have Article III standing – even where a statutory violation implicates a plaintiff's private rights – a plaintiff must allege particularized harm resulting from the violation. *See id.* at 626 (no Article III standing over §15(a) claim, where plaintiff "alleges no particularized harm that resulted from" defendant's failure to adopt a public retention policy); *Cothron,* 2020 WL 3250706 at *3 (no Article III standing over §15(a) claim where, even though plaintiff alleged she was harmed by defendant's failure to comply with retention policy, she "pleaded facts" showing that she suffered no actual injury, as her fingerprints would not, in any event, have been subject to destruction).

Plaintiffs here do not allege that they suffered any form of particularized harm as a result of Clearview's alleged violation of §15(c). To the contrary, Plaintiffs have (i) affirmatively pled that their images were not matched and their biometric data was never disclosed in Illinois, (Complaint, ¶¶18, 20);[10] (ii) defined the proposed Class to include only individuals whose images were never matched and whose biometric data have never been disclosed in Illinois, (*id.*, ¶25);

---

[10] As noted above, Clearview's software application does not disclose biometric facial scans to app users. In the event of a match between the image on an uploaded photograph and an image in Clearview's database contained in facial scans created from photographs in the database, only the matched *photograph* from the database is displayed to the app user. *See* n. 4. Photographs are expressly exempted from BIPA's definition of biometric data. *See* 740 ILCS 14/10.

10

(iii) affirmatively pled that they and the proposed Class suffered no injury from Clearview's violation of §15(c) other than statutory aggrievement, (*id*., ¶39); and (iv) precluded any claim for risk of future harm from the statutory violation by limiting their and the proposed Class's claims to Clearview's past conduct ending on January 17, 2020, (*id*., ¶¶25, 34). *Bryant* expressly precludes Article III standing where, as here, plaintiffs allege no actual harm resulted from the statutory violation at issue. 958 F.3d at 626; *accord Cothron*, 2020 WL 3250706, at *3.

The holding in *Bryant* is consistent with the Seventh Circuit's decision last year in *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). In *Casillas*, the plaintiff alleged that the defendant violated a provision of the Fair Debt Collection Practices Act ("FDCPA") that requires debt collection letters to advise recipients regarding how to preserve their rights to contest the debt. *Id*. at 332. This statutory protection plainly involved the debtor's substantive private rights. The debt collector failed to provide the notice, the plaintiff sued, and the Seventh Circuit affirmed a dismissal for lack of Article III standing. The court reasoned that, because the plaintiff had never planned to contest the debt, she was never at risk of forfeiting her rights. *Id*. at 334. The debt collector's "bare procedural violation" of the FDCPA did not increase the risk of any harm to the plaintiff's concrete interests, and so "was insufficient for purposes of Article III." *Id*. at 339.

Other Courts of Appeals have similarly held that Article III standing is lacking when a plaintiff alleges no particularized harm from the defendant's violation of a statute, even when a statute creates a substantive private right. In *Trichell v. Midland Credit Mgmt, Inc.,* No. 18-14144, 2020 WL 3634917, at *7 (11th Cir. July 6, 2020), also a case under the FDCPA, the United States Court of Appeals for the Eleventh Circuit held, relying on *Casillas*, that plaintiffs suing for violation of a provision of the Act prohibiting debt collectors from sending misleading debt

11

collection letters suffered no concrete injury, and thus lacked Article III standing, where the plaintiffs admitted they were not actually misled by the letters. *Id.*

The United States Court of Appeals for District of Columbia Circuit reached an identical result a month earlier in *Frank v. Autovest, LLC*, 961 F.3d 1185 (D.C. Cir. 2020). In *Frank*, also an FDCPA case, the plaintiff claimed that the defendants had violated the FDCPA by filing false affidavits in a collection action, citing the FDCPA's prohibitions on misleading statements and unfair collection methods. The Court of Appeals held that the plaintiff lacked standing because the false affidavits did not mislead or otherwise injure the plaintiff. *Id*. at 1189-90. As the court explained, it was not enough that the violation of a plaintiff's substantive statutory rights might, in some instances, be capable of causing a concrete injury; the plaintiff is required to allege and prove that such an injury actually occurred:

> A misrepresentation in a debt collector's court affidavit—including a false statement about the affiant's employer—is certainly *capable* of causing a concrete and particularized injury. But Frank has not demonstrated that *these* statements had that effect. Without that showing, Frank lacks standing—even if Autovest and Andrews violated the FDCPA. (*Id*. at 1189.)

*Bassett v. ABM Parking Services, Inc.*, 883 F.3d 776 (9th Cir. 2018), is to the same effect. In *Bassett*, the United States Court of Appeals for the Ninth Circuit considered a provision of the Fair Credit Reporting Act ("FCRA") that required businesses to redact certain credit card information, including the card's expiration date, on printed receipts. *Id.* at 777-78. The plaintiff alleged that a parking garage had violated this requirement by giving him a receipt displaying his card's full expiration date. *Id*. at 778. The Court of Appeals held that even if the FCRA created a substantive right to the "nondisclosure of a consumer's private financial information to identity thieves," the parking garage's failure to redact the credit card's expiration date did not impact this substantive right, because no one but the plaintiff himself saw the expiration date. *Id*. at 782–83.

Thus, the plaintiff had failed to allege a concrete injury-in-fact and lacked Article III standing. *Id.* at 783.

These cases establish a consistent principle for assessing whether a procedural violation of a statute that confers substantive rights gives rise to Article III standing. Unless a plaintiff can show actual harm resulting from the alleged violation of the statutory provision, the concrete and particularized injury-in-fact necessary for Article III standing does not exist. Thus, even if §15(c)'s general prohibition on private entities, like Clearview, profiting from biometric data is deemed to give rise to private substantive rights, as opposed to a general public right, Plaintiffs' explicit acknowledgment that their biometric data was never disclosed and their affirmative allegations in the Complaint that they suffered no injury (other than statutory aggrievement) from Clearview's violation of §15(c) precludes any finding of Article III injury.

### III. Clearview Has Not Shown, and Cannot Now Establish, that the Court Has Article III Standing over Plaintiffs' Section 15(c) BIPA Claim.

BIPA provides a private right of action to any person "aggrieved" by a violation of the statute, *see* 740 ILCS §14/20, and the Illinois Supreme Court has held that, even absent any allegation of actual injury, Plaintiffs may proceed with BIPA claims in Illinois state court and recover statutory damages. *Rosenbach v. Six Flags Ent'mt Corp.*, 2019 IL 123186. Illinois standing requirements are less restrictive than federal Article III standing requirements. *Bryant*, 958 F.3d at 622; *see also Greer v. Illinois Hous. Dev. Auth.*, 122 Ill. 2d 462, 491 (1988) ("We are not, of course, required to follow the Federal law on issues of justiciability and standing"); *Duncan v. FedEx Office & Print Servs., Inc.*, 2019 IL App (1st) 180857, ¶21 ("Illinois courts generally are not as restrictive as federal courts in recognizing the standing of a plaintiff to bring a claim").

Article III's more stringent requirements, however, apply where a defendant removes a state-law action to federal court, and federal law is clear that Article III standing is a necessary

13

component of this Court's subject matter jurisdiction. *See, e.g., Moore v. Olsen*, 368 F.3d 757, 760 (7th Cir. 2004) ("If Congress has authorized federal courts to resolve particular claims, <u>and</u> if the claim presents a case or controversy within the scope of Article III, then federal courts have subject-matter jurisdiction") (emphasis added); *see McGinnis v. United States Cold Storage, Inc.*, 382 F. Supp.3d 813, 815, n.1 (N.D. Ill. 2019) (BIPA case) ("[A] plaintiff must also satisfy Article III's requirements to establish subject matter jurisdiction over a case, in addition to statutorily conferred jurisdiction.") (citing *Moore*).

When a lack of Article III standing is demonstrated following the removal of a case from state court, a federal court must remand that case back to state court for lack of subject matter jurisdiction. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496 (6th Cir. 1999) ("Plaintiffs do not have standing to bring this action . . .. Accordingly, this Court lacks subject matter jurisdiction and this action must be remanded to the state court from which it was removed"); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 540 (3d Cir. 1994) ("a determination that there is no standing . . . requires us to remand . . . to state court"); *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't Human Servs.*, 876 F.2d 1051, 1053-54 (1st Cir. 1989) (same); *see also* 28 U.S.C. §1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Clearview has based its removal of this action solely on the proposition that it meets the diversity requirements of CAFA set forth in 28 U.S.C. §1332(d) – *i.e*., "the putative class exceeds 100 members, at least one plaintiff is diverse from at least one defendant, and the amount in controversy exceeds $5 million." Notice of Removal at 1; *see also id.* at 2-4. However, as the cases cited above demonstrate, the satisfaction of statutory requirements for subject matter jurisdiction, taken alone, is insufficient to support removal unless Article III standing is also

14

demonstrated. As the proponent of federal jurisdiction, Clearview bears the burden of establishing Article III standing. *See Bryant*, 958 F.3d at 620 ("the party invoking federal jurisdiction [through removal] ... bears the burden of establishing [plaintiffs'] Article III standing").

Clearview made no such showing in its Notice of Removal and can make no such showing now. The Seventh Circuit's recent *Bryant* decision and the allegations in Plaintiffs' Complaint preclude Clearview from establishing Article III standing because Plaintiffs' Complaint does not allege any concrete or particularized harm from Clearview's violation of §15(c) of BIPA, which is the sole claim contained in Plaintiffs' Complaint.

## **Conclusion**

The Court should find that defendant Clearview AI, Inc. has failed to establish that the Court has subject-matter jurisdiction over the claim brought pursuant to Section 15(c) of BIPA in Plaintiffs' Complaint because Plaintiffs lack Article III standing to pursue that claim in federal court. On the basis of that finding, the Court should grant Plaintiffs' Motion to Remand and remand this case back to the Circuit Court of Cook County, Illinois, where it was originally filed, pursuant to 28 U.S.C. §1447(c).

Dated: July 21, 2020

Respectfully submitted,

MELISSA THORNLEY
DEBORAH BENJAMIN-KOLLER
JOSUE HERRERA

/s/ David S. Golub
One of their attorneys

| | |
|---|---|
| Daniel M. Feeney<br>Zachary J. Freeman<br>Miller Shakman Levine & Feldman LLP<br>180 North LaSalle Street, Suite 3600<br>Chicago, IL 60601<br>Tel. (312) 263-3700<br>Fac. (312) 263-3270<br>Email: dfeeney@millershakman.com<br>      zfreeman@millershakman.com<br><br>David S. Golub (*pro hac vice*)<br>Steven L. Bloch (*pro hac vice*)<br>Silver Golub & Teitell LLP<br>184 Atlantic Street<br>Stamford, CT 06901<br>Tel. (203) 325-4491<br>Fac. (203) 325-3769<br>Email: dgolub@sgtlaw.com<br>      sbloch@sgtlaw.com | Kevin M. Forde<br>Brian P. O'Meara<br>Kevin R. Malloy<br>Forde & O'Meara LLP<br>111 West Washington Street<br>Suite 1100<br>Chicago IL 60602<br>Tel. (312) 641-1441<br>Fac. (312) 641-1288 (<br>Email: kforde@fordellp.com<br>      bomeara@fordellp.com<br>      kmalloy@fordellp.com |