IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA THORNLEY, DEBORAH BENJAMIN-KOLLER, and JOSUE HERRERA, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No. 20 C 3843 |
| Plaintiffs, | ) ) | Judge Sharon Johnson Coleman |
| v. | ) ) | |
| CLEARVIEW AI, INC., | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

    A.  Plaintiffs' Original Complaint .................................................................4

    B.  Plaintiffs File a Second Complaint in State Court.........................................5

ARGUMENT .....................................................................................................6

I.    LEGAL FRAMEWORK FOR ANALYZING PLAINTIFFS' ALLEGED INJURY.............6

II.   PLAINTIFFS ALLEGE AN INJURY-IN-FACT .................................................9

CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bassett v. ABM Parking Servs., Inc.*,
883 F.3d 776 (9th Cir. 2018) .................................................13

*Bryant v. Compass Gp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ........................................ *passim*

*Casillas v. Madison Ave. Assocs., Inc.*,
926 F.3d 329 (7th Cir. 2019) .................................................12

*Cho v. Maru Rest., Inc.*,
194 F. Supp. 3d 700 (N.D. Ill. 2016) .................................................11

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) .................................................13

*Ent. One UK Ltd. v. 2012Shiliang*,
384 F. Supp. 3d 941 (N.D. Ill. 2019) .................................................9

*Frank v. Autovest, LLC*,
961 F.3d 1185 (D.C. Cir. 2020) .................................................13

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
No. 18-cv-20048, 2018 WL 4292018 (S.D. Fla. Sept. 10, 2018) ...........................13

*Griffith v. ContextMedia, Inc.*,
235 F. Supp. 3d 1032 (N.D. Ill. 2016) .................................................8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................6

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .................................................8

*Rosenbach v. Six Flags Ent. Corp.*,
2019 IL 123186, 129 N.E.3d 1197 (2019) .................................................7

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) .................................................6, 7, 11,12

*Trichell v. Midland Credit Mgmt., Inc.*,
No. 18-14144, 2020 WL 3634917 (11th Cir. July 6, 2020) ...........................12, 13

*Woodard v. Victory Records, Inc.*,
No. 11 C 7594, 2016 WL 1270423 (N.D. Ill. Mar. 31, 2016) ................................................8, 9

**Statutes**

29 U.S.C. § 206 .........................................................................................................................11

42 U.S.C. §§ 3604, 3613 .........................................................................................................11

Illinois Biometric Information Privacy Act ......................................................................... *passim*

Defendant Clearview AI, Inc. ("Clearview") respectfully submits this memorandum of law in opposition to Plaintiffs' motion for remand ("Motion").[1]

## INTRODUCTION

Plaintiffs' Motion—their second attempt to avoid federal court—is a gambit to keep this action apart from the other overlapping putative federal class actions against Clearview, presumably so that Plaintiffs do not lose control of the litigation in a crowded field of other counsel. Even though this action is indisputably subject to federal jurisdiction under the Class Action Fairness Act ("CAFA"), involves the same allegations as the other cases before the Court, and was filed on behalf of an overlapping set of putative class members, Plaintiffs argue that they have not alleged any actual injury, and thus do not have standing to sue in federal court. Because Plaintiffs' Motion is contrary to the same, recent decision from the Seventh Circuit that Plaintiffs label as "dispositive" (Motion at 7)—*Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020)—the Motion should be denied.

Plaintiffs assert a single claim for violation of Section 15(c) of the Illinois Biometric Information Privacy Act ("BIPA"), which provides that a company may not "sell, lease, trade, or otherwise profit from a person's" biometric identifiers or information. Plaintiffs allege that Clearview violated this statutory prohibition because it allegedly "sold access to" or "otherwise profited in Illinois from Plaintiffs' and the Class's biometric identifiers or biometric information

---

[1] Clearview does not waive, and expressly reserves, all rights, claims, and defenses, including without limitation all defenses with respect to personal jurisdiction and otherwise as well as the right to seek a transfer of this action.

included in the Clearview AI Database." ECF No.1-1 ("Complaint" or "Compl.") ¶ 34.[2] Under *Bryant*, Plaintiffs' alleged violation gives rise to an injury-in-fact under Article III.

The *Bryant* court held that an alleged violation of BIPA Section 15(b), which governs the collection of a "person's" biometric information, was "enough to show injury-in-fact without further tangible consequences." 958 F.3d at 624. In reaching this conclusion, the Seventh Circuit explained that the plaintiff "was asserting a violation of her <u>own</u> rights"—"much like an act of trespass would be"—and that "[t]his was no bare procedural violation." *Id.* (emphasis added). The same reasoning applies here. Plaintiffs' alleged violation of Section 15(c) is "an invasion of [their] private domain" under BIPA, and thus satisfies the injury-in-fact requirement of Article III. *Id.*

Plaintiffs' arguments in support of remand are weak. *First*, Plaintiffs try to distinguish the analysis in *Bryant* by pointing out that Section 15(c), unlike Section 15(b), does not involve "BIPA's informed consent regime," and therefore Plaintiffs did not suffer an "informational injury." Motion at 9. But that argument misses the primary basis for the holding in *Bryant*. The Seventh Circuit concluded that the plaintiff there alleged an injury-in-fact first and foremost because she alleged "an invasion of her private domain," and only then went on to explain that, "[i]f we <u>instead</u> analyze this case as a type of informational injury, we come to the same conclusion." 958 F.3d at 624 (emphasis added).

*Second*, Plaintiffs argue that "Section 15(c) contains no exceptions" and that "[l]ike any regulation or civil or criminal statute of general application, the prohibition imposed by § 15(c) runs for the benefit of the public and vindicates public rights." Motion at 10. This argument is

---

[2] Although Clearview denies this allegation and will explain at the appropriate time why it rests on Plaintiffs' misunderstandings concerning the Clearview app, the Court must accept this allegation as true for purposes of the Motion. *Bryant*, 958 F.3d at 620.

erroneous in multiple respects. As an initial matter, the express terms of Section 15(c)—just like Section 15(b) in *Bryant*—prohibit the sale a "person's" biometric identifiers. Far from serving to vindicate a public right, Plaintiffs allege that their <u>own</u> biometric identifiers were sold in violation of Section 15(c). This allegation is a concrete and particularized injury under Article III. Moreover, accepting Plaintiffs' argument would mean that a person would never have standing to seek redress for any alleged violation of a "regulation or civil or criminal statute of general application." Not only would that fly in the face of established law, but it would also be an absurd result.

*Third*, Plaintiffs argue that, even if Section 15(c) claims may generally assert a violation of a person's private rights, Plaintiffs in this case have not suffered any injury because they specifically allege that no users of the Clearview app ever uploaded photos of Plaintiffs or otherwise used the app to identify Plaintiffs. Regardless of their artful pleading—which is solely designed to try to avoid federal jurisdiction—*Bryant* expressly defeats this argument. The Seventh Circuit held that the collection of biometric information in violation of BIPA was "enough to show injury-in-fact <u>without further tangible consequences</u>." *Bryant*, 958 F.3d at 624 (emphasis added). Thus, the purported injury for Article III purposes occurred when Clearview allegedly sold or profited from Plaintiffs' biometric identifiers (as Plaintiffs have clearly pleaded)—not at some point later in time based on what any particular user did with Clearview's app.

Plaintiff David Mutnick had it right when he said that Plaintiffs' remand argument "misconstru[es] [BIPA] and well-settled law governing injury-in-fact under Article III." Case No. 20-512 (N.D. Ill), ECF No. 85 at 2. As discussed below, the Court should deny the Motion.

## BACKGROUND

The history of this case reveals the extent to which Plaintiffs have manipulated their claims in an attempt to avoid the Court's jurisdiction.

### A.      Plaintiffs' Original Complaint

On March 19, 2020, after six other federal class actions already had been filed,[3] Plaintiffs filed their class action complaint against Clearview in the Circuit Court of Cook County, Illinois (the "Original Complaint").  *See Thornley v. Clearview AI, Inc.*, No. 20-2916 (N.D. Ill.), ECF No. 1-1.  The Original Complaint is very similar to the other previously-filed federal complaints.

In their Original Complaint, Plaintiffs alleged that "Clearview AI built its Database of over three billion photographs by downloading every image it could access" on the internet "through a process known as 'scraping.'"  Original Complaint ¶ 26.  Plaintiffs alleged that they "maintained social media accounts on the Facebook, Instagram, and Twitter social media platforms," and that they did not consent to or receive notice of Clearview's alleged "collection, capture, storage, and commercialization of [their] face geometry and/or face geometry-based vectors."  *Id.* ¶¶ 53, 55.

Based on these allegations, Plaintiffs brought three BIPA claims against Clearview. Plaintiffs alleged that Clearview violated: (1) Section 15(b), which provides that a company may not "collect, capture, purchase, receive through trade, or otherwise obtain" a person's biometric information without providing notice and obtaining informed consent (Count I); (2) Section 15(c), which provides that a company may not "sell, lease, trade, or otherwise profit from" a person's biometric information (Count II); and (3) Section 15(a), which provides that a company "in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" (Count III).  *Id.* ¶¶ 75-96.

---

[3] *See Mutnick v. Clearview AI, Inc.*, No. 1:20-cv-512 (N.D. Ill.)*; Roberson v. Clearview AI, Inc.*, No. 1:20-cv-111-RDA-MSN (E.D. Va.); *Hall v. Clearview AI, Inc.*, No. 1:20-cv-846 (N.D. Ill.); *Calderon v. Clearview AI, Inc.*, No. 1:20-cv-1296-CM (S.D.N.Y.); *Burke v. Clearview, AI, Inc.*, No. 20-cv-370-BAS-MSB (S.D. Cal.); *Broccolino v. Clearview AI, Inc.*, No. 1:20-cv-2222-CM (S.D.N.Y.).

On May 15, 2020, Clearview removed the original action to this district under CAFA because the "putative class exceeds 100 members, at least one plaintiff is diverse from at least one defendant, and the amount in controversy exceeds $5 million." No. 20-2916, ECF No. 1 at 1. Rather than proceeding in federal court, Plaintiffs voluntarily dismissed their complaint on May 21, 2020, and tried a new litigation strategy with the express purpose of avoiding the *Bryant* decision. ECF Nos. 13, 15.

### B. Plaintiffs File a Second Complaint in State Court

On May 27, 2020, Plaintiffs commenced a new lawsuit against Clearview in the Circuit Court of Cook County. No. 20-3843, ECF No.1-1. The Complaint contains the same core allegations that were in the Original Complaint, including that Clearview "secretly created a database of over three billion facial scans" by "'scraping' photographs posted and accessible on the internet," Plaintiffs "maintained public social media accounts containing accessible photographs" of themselves, "Plaintiffs' photographs were collected into the Clearview AI Database [and] converted to biometric identifiers," and Clearview "sold access to Plaintiffs' and the Class' biometric identifiers and biometric information." Compl. ¶¶ 7-9, 12, 15.

Although the core allegations are the same as in the Original Complaint, Plaintiffs dropped two of their three BIPA claims. Specifically, in an attempt to avoid the *Bryant* holding, Plaintiffs dropped their Section 15(a) and (b) claims, but kept their Section 15(c) claim. *Id.* ¶¶ 33-39. Contrary to their initial filing, Plaintiffs now go so far as to allege that they "suffered no injury" because they do not allege (1) "a photograph of [any] Class member was ever uploaded to the Clearview AI App by any user of the Clearview AI App"; (2) "any user of the Clearview AI App sought to use the Clearview AI App and Database to identify them"; and (3) "their biometric identifiers or biometric information in the Clearview AI Database were never disclosed to any users of the Clearview AI App." *Id.* ¶ 25.

But this artful (and contradictory) pleading cannot escape the reality that Plaintiffs have Article III standing under *Bryant*, and so Defendants again removed the action to federal court under CAFA. No. 20-3843, ECF No. 1. As set forth below, this case should remain in federal court, where others like it are pending.

## ARGUMENT

Plaintiffs do not contest the applicability of CAFA to their case. Instead, Plaintiffs' only argument in support of remand is that their newly-crafted Complaint alleges no injury-in-fact and, thus, Plaintiffs do not have Article III standing. The Court should reject that argument because under *Bryant*, Plaintiffs plainly allege a concrete and particularized injury sufficient to support standing.

## I. LEGAL FRAMEWORK FOR ANALYZING PLAINTIFFS' ALLEGED INJURY

For Plaintiffs to have standing, three requirements must be satisfied: "(1) [they] must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between [their] injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision." *Bryant*, 958 F.3d at 620-21 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Only the first requirement, injury-in-fact, is at issue here.

In *Spokeo, Inc. v. Robins*, the Supreme Court explained that "an injury in fact must be both concrete *and* particularized." 136 S. Ct. 1540, 1548 (2016). For an injury to be "concrete," it must actually exist but it need not be "tangible." *Id.* at 1549. A legislature may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (quotations omitted). However, "a bare procedural violation, divorced from any concrete harm" will not suffice. *Id.* Instead, "the plaintiff must show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that the legislature sought to protect

by enacting the statute." *Bryant*, 958 F.3d at 621 (citations and internal quotation marks omitted). Moreover, "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (citations and internal quotation marks omitted).

As explained in *Bryant*, Justice Thomas wrote a concurrence in *Spokeo* that "drew a useful distinction between two types of injuries." *Bryant*, 958 F.3d at 624. "The first, he said, arises when a private plaintiff asserts a violation of her own rights; the second occurs when a private plaintiff seeks to vindicate public rights." *Id.* "As examples of the first, he mentioned actions for trespass, infringement of intellectual property rights, and unjust enrichment; as examples of the second, he pointed to actions seeking to abate a public nuisance, or disputes over the use of public land." *Id.* (citing *Spokeo*, 136 S. Ct. at 1551-52).

Because the injury-in-fact analysis depends on "the underlying concrete interest that the legislature sought to protect by enacting the statute," the Illinois Supreme Court's only decision interpreting BIPA standing provides a "helpful" analysis. *Id.* at 621, 622. In *Rosenbach v. Six Flags Entertainment Corp.*, the Illinois Supreme Court explained that, "[t]hrough [BIPA], our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Id.* (quoting *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, 129 N.E.3d 1197, 1206 (2019)).

The Seventh Circuit in *Bryant* applied *Spokeo* and *Rosenbach* in evaluating the same standing arguments that Plaintiffs make here, but as applied to BIPA Sections 15(a) and (b). With respect to Section 15(b) claims, the Seventh Circuit held that there was federal jurisdiction because "Bryant was asserting a violation of her own rights—her fingerprints, her private information— and that is enough to show injury-in-fact without further tangible consequences. This was no bare procedural violation; it was an invasion of her private domain, much like an act of trespass would

be." *Id.* at 624. The Seventh Circuit continued that "[i]f we instead analyze this case as a type of informational injury, we come to the same conclusion." *Id.*; *see also Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) (concluding that plaintiffs sufficiently alleged a concrete injury for standing purposes when they claimed that Facebook violated BIPA by using facial recognition technology without informed consent).

In contrast to her Section 15(b) claim, *Bryant* held that the plaintiff "alleges no particularized harm that resulted from Compass's violation of section 15(a)," which "obligates private entities that collect biometric information to make publicly available a data retention schedule." 958 F.3d at 626. "In contrast to the obligations set forth under section 15(b), the duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects." *Id.*

The outcome in *Bryant* is consistent with other cases arising from an alleged statutory violation of a person's privacy or other intangible right. For example, a plaintiff who receives unsolicited telephone communications has Article III standing to pursue a claim under the Telephone Consumer Protection Act ("TCPA"). In *Griffith v. ContextMedia, Inc.*, the plaintiff alleged that she received unwanted text messages in violation of the TCPA. 235 F. Supp. 3d 1032, 1035 (N.D. Ill. 2016). Relying on the reasoning in *Spokeo* and Congress's intent to protect consumers from "an encroachment" on "the freedom of consumers to choose how their telephones are used," the court concluded that the receipt of unwanted text messages constitutes a concrete injury to plaintiff's privacy sufficient to confer Article III standing. *Id.* at 1033-35. Likewise, individuals can sue anyone who violates their right to publicity under the Illinois Right of Publicity Act ("IRPA"). *See Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016). In *Woodward*, the defendant argued that an IRPA claim should be

dismissed because the plaintiffs failed to show that they suffered any harm. *Id.* The court agreed that plaintiffs had failed to demonstrate "actual damages," but permitted the IRPA claim to proceed in federal court because plaintiffs were also seeking statutory damages. *Id.* Similarly, plaintiffs can sue to vindicate their intellectual property rights in federal court, regardless of whether the alleged infringement actually harmed the plaintiff. For example, in *Entertainment One UK Ltd. v. 2012Shiliang*, the court awarded statutory damages for a Lanham Act trademark infringement claim despite the lack of actual harm because the mere act of counterfeiting Plaintiffs' mark was itself an injury. 384 F. Supp. 941, 953-54 (N.D. Ill. 2019).

The common thread throughout these cases is that the harm was not a physical, monetary, or tangible injury, but rather, the loss of the plaintiffs' ability to control information that was their own or to protect their own privacy interests. Likewise, plaintiffs suffer an injury-in-fact under BIPA Section 15(c) when a third-party allegedly sells their biometric information because the plaintiffs lose the ability to protect their own information and privacy interests.

Applying this legal framework, Plaintiffs plainly allege an injury-in-fact giving rise to Article III standing.

## II. PLAINTIFFS ALLEGE AN INJURY-IN-FACT

Plaintiffs assert a single BIPA claim under Section 15(c) based on their allegations that Clearview collected, sold, and profited from their biometric identifiers. Compl. ¶ 34. Just like Section 15(b) regulates the collection of "person's" biometric identifiers—a violation of which gave rise to an alleged injury in *Bryant*—Section 15(c) prohibits the sale of a "person's" biometric identifiers. Thus, the alleged violation of Section 15(c) here, just like the alleged violation of 15(b) in *Bryant*, is based on an "invasion" of Plaintiffs' "own rights," which is a sufficient injury-in-fact under Article III. *Bryant*, 958 F.3d at 624.

Moreover, the difference between the language of Section 15(a) and Section 15(c) provides

further confirmation that an alleged violation of Section 15(c) gives rise to an injury-in-fact.  As the *Bryant* court explained, Section 15(a) explicitly requires a company to develop a retention schedule that is "available to the public."  *Id.* at 626.  Thus, the duty is "owed to the <u>public generally</u>, not to particular persons whose biometric information the entity collects."  *Id.* (emphasis added).  In contrast, an alleged violation of Section 15(c) is based on the sale of a "person's" biometric identifiers.  For these reasons, the alleged injury here is both concrete (*i.e.*, an injury that BIPA was enacted to address) and particularized (*i.e.*, it affects the Plaintiffs in a personal and individual way).  Plaintiffs' various arguments to the contrary are all flawed.

*First*, Plaintiffs argue that, "[a]s with the provision of § 15(a) at issue in *Bryant*, the provisions of § 15(c) do not involve, in any way, BIPA's informed consent regime," and therefore Plaintiffs "suffered no 'informational' injury."  Motion at 9.  But alleging an "informational injury" is just one way to establish an injury-in-fact under Article III.  In fact, the Seventh Circuit in *Bryant* held that one basis for determining Article III standing was to evaluate whether the alleged harm was an "informational injury."  958 F.3d at 624 ("If we <u>instead</u> analyze this case as a type of informational injury, we come to the same conclusion.") (emphasis added).  However, the primary holding in *Bryant* did not turn on the court's discussion of informational injuries.  Rather, the Seventh Circuit's primary holding relied on the fact that the plaintiff alleged an injury-in-fact because she alleged "an invasion of her private domain."  *Id.*  That is clearly what is alleged here.

*Second*, Plaintiffs argue that "Section 15(c) contains no exceptions" to the "general prohibition on private entities . . . profiting from biometric data," and that "[l]ike any regulation or civil or criminal statute of general application, the prohibition imposed by § 15(c) runs for the benefit of the public and vindicates public rights."  Motion at 10, 13.  This argument ignores Plaintiffs' allegations.  Plaintiffs expressly allege that their <u>own</u> biometric data was sold, and they

are seeking damages for a violation of their <u>own</u> rights. These are not allegations seeking to vindicate a general public right.

Under Plaintiffs' theory, an injured party would not have standing to file a lawsuit based on a "regulation or civil or criminal statute of general application," but that theory is contrary to settled law. For example, anti-discrimination laws do not include any "exceptions" that give people the option to consent to be discriminated against. Discriminating against someone on the basis of race is impermissible under federal housing law, and if someone violates the law, the aggrieved person has standing to sue. 42 U.S.C. §§ 3604, 3613. Similarly, the Fair Labor Standards Act creates a minimum wage that employers may not violate, regardless of whether the employee consents, and an employee can sue in federal court for violations. 29 U.S.C. § 206; *Cho v. Maru Rest., Inc.*, 194 F. Supp. 3d 700, 703 (N.D. Ill. 2016). Like these statutes, Section 15(c) imposes a general prohibition on the sale of a "person's" biometric identifiers, an alleged violation of which satisfies the injury-in-fact requirement of Article III.

*Third*, Plaintiffs argue that, even if Section 15(c) claims may generally assert a violation of a person's private rights, "there would still be no Article III injury in this case" because Plaintiffs "do not allege that they suffered any form of particularized harm as a result of Clearview's alleged violation." Motion at 10. This argument is based on Plaintiffs' decision to manipulate their Complaint such that they affirmatively allege that no users of the Clearview app ever uploaded photos of Plaintiffs or otherwise used the app to identify Plaintiffs. Compl. ¶ 25. This argument fails under *Bryant*. The Seventh Circuit held there that the collection of the plaintiff's fingerprints without her consent was "enough to show injury-in-fact <u>without further tangible consequences</u>." *Bryant*, 958 F.3d at 624 (emphasis added). This conclusion flows from Supreme Court precedent, which instructs that, to allege an injury-in-fact, a plaintiff "need not allege any <u>additional</u> harm

11

beyond the one [the legislature] has identified." *Spokeo*, 136 S. Ct. at 1549 (emphasis in original).

Likewise, here, Section 15(c) provides that a private entity may not "sell, lease, trade, or otherwise profit from" a person's biometric identifier or information. The injury occurs when a private entity sells or profits from a person's biometric identifiers or information—not at some point later in time. Plaintiffs sufficiently allege an injury-in-fact because they allege that Clearview "sold access to Plaintiffs' and the Class's biometric identifiers or biometric information in the Clearview AI Database to customers based in Illinois or otherwise profited in Illinois from Plaintiffs' and the Class's biometric identifiers or biometric information included in the Clearview AI Database." Compl. ¶ 34 (emphasis added). Just like in *Bryant*, Plaintiffs' alleged violation of Section 15(c) is "enough to show injury-in-fact without further tangible consequences." 958 F.3d at 624. Thus, the injury-in-fact analysis does not turn on whether users of the Clearview app later uploaded or identified photos of Plaintiffs.

Plaintiffs point to several non-BIPA cases in support of their "no injury" argument, but those cases are all distinguishable. Motion at 11-12. Plaintiffs primarily rely on *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), which was also relied upon by the plaintiff in *Bryant*. In that case, a debt collector failed to inform a debtor that any response to its debt collection notice needed to be in writing, as required by the Fair Debt Collection Practices Act. 926 F.3d at 334-35. The Seventh Circuit held that the plaintiff lacked standing to sue for this technical violation because the plaintiff admitted that no amount of notice or information would have changed her behavior. *Id.* As the *Bryant* court explained in distinguishing *Casillas*, the plaintiff there "plead[ed] [herself] out of court." 958 F.3d at 625. Plaintiffs point to two other debt collection cases, but there again the plaintiffs pleaded themselves out of court by admitting that they were not misled. *See Trichell v. Midland Credit Mgmt., Inc.*, No. 18-14144, 2020 WL

3634917, at *7 (11th Cir. July 6, 2020) (plaintiffs admitted they were not actually misled by the information the debt collector provided); *Frank v. Autovest, LLC,* 961 F.3d 1185, 1188 (D.C. Cir. 2020) (statements by defendants did not mislead the plaintiff). Plaintiffs also rely on a Fair Credit Reporting Act case, but no injury materialized there because no one other than plaintiff saw his improperly disclosed credit card information. *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776 (9th Cir. 2018).

In all these non-BIPA cases, the courts found that the plaintiffs did not allege an injury-in-fact because the lack of notice or the disclosure at issue did not personally injure or affect the particular plaintiffs. Thus, there was no subjective injury. By contrast, the injury here is objective and occurred when Clearview sold or profited from Plaintiffs' biometric identifiers, as alleged in the Complaint. This alleged "invasion of [Plaintiffs'] private domain" "is enough to show injury-in-fact without further tangible consequences." *Bryant*, 958 F.3d at 624. And that injury-in-fact confers jurisdiction in this Court.[4]

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion to remand.

---

[4] To the extent Plaintiffs suggest that Clearview should have argued in its removal notice that Plaintiffs have Article III standing, Plaintiffs are wrong. Motion at 14-15; *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-cv-20048, 2018 WL 4292018, at *2 (S.D. Fla. Sept. 10, 2018) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014)) ("Before the Court now is only the argument that Defendants were required to allege Plaintiff's standing in their notice of removal. That is clearly not what the law requires.").

DATED: August 13, 2020                    JENNER & BLOCK LLP

                                          By: */s/  Lee Wolosky*

David P. Saunders                         Lee Wolosky (admitted *pro hac vice*)
Howard S. Suskin                          Andrew J. Lichtman (admitted *pro hac vice*)
JENNER & BLOCK LLP                        JENNER & BLOCK LLP
353 North Clark Street                    919 Third Avenue
Chicago, Illinois 60654                   New York, New York 10022-3908
Phone: (312) 222-9350                     Phone: (212) 891-1600
hsuskin@jenner.com                        lwolosky@jenner.com
dsaunders@jenner.com                      alichtman@jenner.com

                                          *Attorneys for Defendant Clearview AI, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 13, 2020 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

By:  */s/  Lee Wolosky*